ATCHISON, T. & S. F. RY. CO. v. JAMISON.

No. 4445.   Opinion Filed May 25, 1915.

(149 Pac. 195.)

**APPEAL AND ERROR—Injury to Passenger—Reversal—Submission of Issues.** In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the defense; and failure so to do, at the request of defendant, constitutes prejudicial error.

(Syllabus by Bleakmore, C.)

*Error from District Court, Alfalfa County;*

*James W. Steen, Judge.*

Action by George T. Jamison against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Cottingham & Hayes* and *George M. Green, A. J. Titus* and *Charles H. Woods,* for plaintiff in error.

*George W. Partridge* and *M. C. Garber,* for defendant in error.

BLEAKMORE, C. This is an action for personal injuries, commenced in the district court of Alfalfa county on the 10th day of November, 1911, by the defendant in error, as plaintiff,

Form No. 20

against the plaintiff in error, as defendant. The parties will be referred to hereafter as they appeared in the trial court.

The petition alleges:

"That on or about the 30th day of January, 1910, the defendant company for a valuable consideration, same being its regular charge, undertook and agreed to safely transport this plaintiff from the town of Fargo, Okla., to Cherokee, Okla.; that on said day, while the plaintiff was occupying a seat in one of two cars attached to ·a train of the defendant company and when said train was nearing and approaching the station of the city of Cherokee, and after the engine ·hauling said train had whistled for the station, and the porter and conductor had called the station of Cherokee, and stopped the train, as the plaintiff supposed, at the alighting place at the depot, the conductor in charge and in the employ of the defendant company called to this plaintiff and beckoned to him to alight from said train, stating that it was the place for plaintiff to get off, and, being totally unacquainted with the location of the depot and the alighting place for passengers, and relying wholly upon the statements and representations of the conductor, plaintiff followed the conductor down the aisle of said car, and, while attempting to alight from said train, said defendant company, by its agents, servants, and employees, carelessly and negligently, and without regard to the safety of this plaintiff, and while plaintiff was upon the steps of said car, and just as he was about to alight therefrom, started and moved said train in a quick, rapid, careless, and negligent manner, throwing this plaintiff forcibly and violently from the steps of said car," etc.

The defendant pleaded: (1) General denial; (2) contributory negligence; (3) settlement and release of the damages, claimed.

It was the theory of plaintiff that, when the train stopped at the water tank, he, at the express invitation of the conductor, purposing to alight at the station, and believing he had arrived there, left his seat in the coach (a place of safety) and took a position on the steps leading from the platform of the car, from

which he was thrown by a sudden movement of the train and injured. The theory of the defendant was that it had neither specially communicated with plaintiff nor invited him to alight at the place where he was injured, but, on the contrary, had called the station, and had given a general warning to all passengers that the first stop was the water tank, and that plaintiff's injuries were occasioned by his own negligence. The train arrived at Cherokee about 5 o'clock in the morning, while it was yet dark. Plaintiff fell from the train on the side opposite the station.

He testified on direct examination as follows:

"Q. Were you sitting down in a seat? A. Yes, sir. Q. What, if anything, did you do about getting off at Cherokee? A. When the conductor came along he said, 'Here is your place to get off; come on,' and I got up and followed him, and stepped down two steps, and the train started, and that pitched me right on. Q. Had he called the station? A. If he did I didn't hear it. He said, 'Here is your place, come on and get off.' Q. Had the train stopped? A. Yes, sir. Q. Did you see the conductor after you went out? A. No, sir; I never saw any more if him. Q. Then the train started and threw you off before you could get off? A. Yes, sir."

And on cross examination as follows:

"Q. It was still dark when you got to Cherokee, wasn't it? A. Yes, sir. Q. You did not hear the station called? A. No; well, he might have called it; I am hard of hearing; he says to me, 'Come on; here is your place to get off;' and I followed him out and stepped one or two steps down, and when the train started that throwed me right off. Q. Were you hard of hearing then? A. Yes, sir. Q. You were about 88 years old at the time of this accident? A. Yes, sir. Q. Did the train stop before you got out of your seat? A. Yes, sir. Q. But you had not heard the station called? A. No, sir. Q. Then you went back to the back part of the coach to get off? A. No; I followed the conductor out and got to the platform, and stepped one or two steps down, and then the train started and pitched me right off. Q. When you started to get out of your seat to get off the

car the train had stopped then? A. Yes, sir. Q. Was that the first stop it had made on coming into Cherokee? A. Yes, sir."

The conductor specifically denied any conversation with plaintiff, or any knowledge of his injuries until weeks thereafter. He and the porter testified that as the train was approaching the station the porter called: "Cherokee; the first stop is the water tank."

Although requested by defendant, the court wholly failed to charge the jury as to the defense of contributory negligence. Defendant was entitled to have this defense, which had been properly presented by the pleadings and evidence, considered by the jury, under appropriate instructions.

The instructions of the court should be based upon the issues as made by the pleadings and the evidence, and should present the respective theories of the parties in accordance with the testimony offered in support thereof." (*Oklahoma Ry. Co. v. Christenson*, 148 Pac. 94.)

"It is the duty of the court to submit to the jury, and give instructions thereon, any issue, theory, or defense which the evidence tends to support. This right is not affected by the fact that there is countervailing testimony." (*Spurrier Lumber Co. v. Dodson*, 30 Okla. 412, 120 Pac. 934.)

In *C. R. I. & P. Ry. Co. v. Pitchford*, 143 Pac. 1147, held:

"In an action for damages for personal injuries, where the defense of contributory negligence is interposed, and there is testimony fairly tending to establish such defense, instructions which wholly leave out of view the question of plaintiff's contributory negligence, and under which the jury, if they found certain facts to exist, would be bound to find for the plaintiff, although they might also believe the plaintiff by her negligence contributed directly to the accident, are erroneous, and constitute reversible error."

There are numerous assignments of error, but the same ques-

tions may not arise upon a new trial, and we do not deem it necessary to consider them at this time.

Because of the error of the court in failing to instruct the jury as above indicated, the judgment should be reversed, and the cause remanded.

By the Court:  It is so ordered.