TITZER *v.* STATE OF INDIANA.

[No. 25,585. Filed April 8, 1930.]

*William D. Hardy*, for appellant.

*Arthur L. Gilliom*, Attorney-General, and *Harry L. Gause*, Deputy Attorney-General, for the State.

WILLOUGHBY, J.—An indictment was found by the grand jury of Posey County, Indiana, charging that appellant, on or about the 24th day of September, 1927, at said county, did then and there unlawfully and feloniously have in his possession and under his control and use a still and distilling apparatus for the unlawful manufacture of intoxicating liquor. This indictment does not charge that appellant owned the still and distilling apparatus, but that he had them in his possession and under his control and use for the unlawful manufacture of intoxicating liquor. §2719 Burns 1926. This section of statute is as follows: "It shall be unlawful for any person to own or to have in his possession, or under his control, or to use, or to assist in using, any still or distilling apparatus for the unlawful manufacture of intoxicating liquor. Any person violating this section shall be deemed guilty of a felony and, upon conviction, shall be imprisoned for not less than one year nor more than five years, to which may be added a fine of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000). When the defendant shall have been previously convicted under the provisions of this section, the court shall not have the power to suspend the sentence provided herein. The possession of any still or distilling apparatus, not registered according to the provision of the laws of the United States, shall be *prima facie* evidence that such possession was for the purpose of the unlawful manufacture of intoxicating liquor."

The case was tried February 3, 1928, before a jury on

a plea of not guilty. A verdict was returned finding appellant guilty of unlawfully having in his possession and under his control and use a still and distilling apparatus as charged in the indictment herein, and find his true age to be —— years. Judgment was rendered on this verdict, and, on the next day, February 4, 1928, a motion for a new trial was filed and overruled. Appellant has appealed and alleges that the court erred in overruling his motion for a new trial.

In the motion for a new trial, appellant alleges that the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

The evidence set out in appellant's brief is to the effect that on the 24th day of September, 1927, the sheriff of Posey County made a search of the premises up in the northeast part of the county for intoxicating liquor and distilling apparatus. The search was in Smith Township on Mrs. Helmer's farm. The sheriff testified: "We got up there a little after 10 o'clock before noon. I went into the house and met a gentleman coming out. He directed me into the house and I read the warrant to Mrs. Christina Helmer. I then searched for liquor and a still. I read the warrant to the lady, then searched the place. My three deputies made the search, I held this man that was leaving the house. The women didn't leave the house but my deputies did. I next saw them when they brought this man back that started to get away. His name was Henry Crack. Mr. Hyatt and Mr. McKain brought him back. I saw the liquor when Mr. Hyatt and Mr. McKain and Mr. Garten brought it into the house. They brought in eleven 1-gallon jugs of liquor and a still. This apparatus over here is a distill, I believe. This whole thing is a still. We found it back of the house and barn together. It is a still for making liquor or moonshine whisky. We found it on Mrs. Helmer's farm in

Smith township, Posey County, Indiana. This is 1 gallon of whisky we brought up from there. As to whose still and whisky it was, I only know what the lady told me." On cross-examination, he testified: "I made the affidavit for the search warrant. No other witness appeared before the justice of the peace. I had personal knowledge of a still being out there on the place described in the search warrant. I had not seen it, I had information it was there. This information was conveyed to me by letter. I don't know who sent the letter or who wrote the letter. I knew who wrote the letter at the time but I can't call the name now. I didn't testify to that fact before the justice. I had information nearly a year before that. As to who was in possession of the property, I don't know personally." On re-direct examination, he testified: "There is one house and outbuildings and barn on this place, just in a small group."

Another witness, who was a deputy sheriff under Mr. Rowe, testified: "I went with Mr. Rowe to search the Helmer farm. Ot McKain, Russell Garten and Mr. Rowe were with me. After we got there, Mr. Rowe read the search warrant and then we went to make the search." Here witness was asked this question: "And what did you find?" To this appellant interposed an objection and offer to prove, which objection was overruled and appellant excepted. The witness then continued: "I first found a whole group of empty jugs. We found these in a little out-house back of the main buildings, they were 1-gallon glass jugs, twenty-five or thirty of them, about 15 or 20 steps from the house; next we found one 2-gallon stone jug with a pint of whisky in it. That was sitting in a shed, and near the empty ones we found 12 or 15 empty barrels. They had been used for mash barrels, they smelled it, and the rings of mash where it had been set were in the barrels. I found

nine 1-gallon jugs of whisky and a 15 or 18-gallon can with 2 gallons in each jug and about a 52-gallon barrel. I found nine full gallons. This article here is a jug, it is a gallon of whisky that was taken off the Helmer farm. I got it. This apparatus over here is a still. I got it in a briar thicket back of the barn on Mrs. Helmer's place in Smith Township, Posey County, Indiana, right close to and due west of Wendel Switch. I was told whose it was."

Another witness testified substantially the same as the above. Elizabeth Helmer testified that she lived with her mother on the farm and that the farm was owned by her mother and contained 118 acres. When asked whether the still was the property of John Titzer she said, "I think it is." Appellant's brief says this was all the evidence given on the trial of the case. The Attorney-General does not dispute this, and sets out no evidence in his brief.

It is clear from this evidence that there was a still on Mrs. Helmer's farm; that some whisky had been produced by the use of it. When the still was gotten by the sheriff and his deputies upon the search made as described in this evidence, a Mr. Crack was arrested and Mrs. Helmer and her daughter were there at the time, and the still was there. There is not any evidence connecting appellant with this matter except the testimony of Elizabeth Helmer. She at first refused to testify, but, when told to answer, she said, "I think it is." This was in answer to the question as to whether the still was the property of John Titzer. Miss Helmer was then asked again this question: "Is this still the property of de-defendant John Titzer?" She answered: "It is John Titzer's still."

The Attorney-General contends "that the legal title to personal property carries with it constructive possession, and the owner of legal title will be presumed to

be in constructive possession unless actual possession is shown to be in another." There is no evidence tending to show how the still came to be on Mrs. Helmer's farm. The evidence is not disputed that it was Mrs. Helmer's farm. The evidence also shows that, when the still was seized by the officers, it was in the actual possession of Mrs. Helmer and her daughter and Mr. Crack.

The affidavit charges appellant with having the still in his possession and under his control and using it for the unlawful manufacture of intoxicating liquor. The finding of the intoxicating liquor on the farm would indicate that some one had been using the still. But the testimony of Elizabeth Helmer discloses no fact regarding the still, except she says the ownership of it was in the appellant. Appellant is charged, not with the ownership of the still, but with the possession and use of the still unlawfully. If we could infer from the evidence of the ownership of the still that appellant was in the control of it and using it in the unlawful manufacture of intoxicating liquor, we would have to put the inference entirely on the single fact of ownership.

There is no evidence tending to show that appellant had any right to go upon the land of Mrs. Helmer, or that he had ever been on the land. When the officers searched the place and found the still and the contraband liquor on the farm, they found the owner of the farm and her daughter and a man named Henry Crack, who tried to get away, but they brought him back and arrested him. After his arrest, the evidence does not disclose what became of him. When Elizabeth Helmer was on the stand, she refused to answer a number of questions, saying she was afraid to testify, but she did testify that the farm consisted of 118 acres and that her mother owned it and she and her mother lived together on the farm.

If we accept the State's contention that "the legal

title to personal property carries with it constructive possession and the owner of the legal title will be presumed to be in constructive possession unless actual possession is shown to be in another," and, following that rule, we infer that appellant was in constructive possession of the still, we cannot find him guilty of the offense charged in the indictment against him without the further inference that the possession was for the purpose of the unlawful use of the still for the manufacture of intoxicating liquor contrary to the laws of the State of Indiana. While this court will indulge every reasonable inference in support of the verdict, yet such inference must be drawn from premises established by proof. If the verdict in this case is to stand, we must build up a case entirely by inferences drawn from other inferences arising from the single fact of ownership. A verdict of guilty cannot be based on inferences drawn from other inferences. *Hicks* v. *State* (1926), 197 Ind. 294, 150 N. E. 759; *Howard* v. *State* (1923), 193 Ind. 599, 141 N. E. 341.

The verdict is not sustained by sufficient evidence and is contrary to law.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

Myers, J., absent.